No. 11,179.

ALLEN *v*. McFERSON, BANK COMMISSIONER.

Decided April 6, 1925.

Action to enforce liability of a stockholder of an insolvent bank. Judgment for plaintiff.

*Affirmed.*

On Application for Supersedeas.

1. PLEADINGS—*Admissions.* Allegations of a complaint which are not denied by answer are to be taken as admitted.

2. BANKS AND BANKING—*Stock—Ownership.* Where one purchases stock in a bank, for which a certificate is issued to him, and he exercises his right of ownership by giving proxies for voting the stock, he is the owner and subject to the liabilities of a stockholder, notwithstanding he claims to have sold the stock, no transfer having been made on the books of the corporation.

3. *Assessment—Enforcement by Bank Commissioner.* The bank commissioner on taking over the affairs of an insolvent bank, has the right and it is his duty to enforce the collection of assessments against stockholders theretofore regularly levied by the bank officials.

4. *Assessment Against Stockholder—Personal Judgment.* The collection of an assessment against a stockholder of an insolvent bank regularly levied by the bank officials, may be enforced by a personal action against the stockholder.

5. *Stockholders—Liability.* A stockholder of a bank assumes a contractual liability when he becomes a stockholder, the terms of his contract being largely statutory.

*Error to the District Court of Crowley County, Hon. James A. Park, Judge.*

Mr. H. L. LUBERS, for plaintiff in error.

Mr. CHARLES M. ROSE, Mr. LEO P. KELLY, for defendant in error.

*Department One.*

MR. JUSTICE ADAMS delivered the opinion of the court.

McFERSON, state bank commissioner of Colorado, defendant in error and plaintiff below, obtained judgment in an action to enforce liability as a stockholder of a state bank against Allen, defendant, who is plaintiff in error. Defendant brings error and asks for a supersedeas.

Reference hereafter to the plaintiff means McFerson; by the word "defendant," we mean Allen.

The complaint of the bank commissioner alleges his official capacity; the corporate existence of the Citizens State Bank of Ordway; that it was engaged in the banking business until about October 8, 1921; its capital stock was $25,000, divided into 250 shares of $100.00 each, of which the defendant is and was the owner of 10 shares; that on and before August 24, 1921, the capital stock of the bank was impaired and about that time the bank was notified of the impairment by the plaintiff bank commissioner; that about August 29, 1921, the board of directors of the bank made a pro rata assessment of 50 per cent of the par value upon all of the outstanding capital stock of the bank to make good the deficiency, and about September 1, 1921, notified the stockholders, including the defendant, of the assessment. The complaint further recites that about October 8, 1921, the bank placed its assets and affairs in the possession of the bank commissioner for liquidation, and since that time the bank commissioner is and has been in possession of the assets and affairs of the bank for the purpose of liquidation. The failure and refusal of the defendant to pay the assessment upon the stock owned by him is alleged and that it is due and unpaid to the plaintiff; that the bank is insolvent; that if and when all the liabilities of stockholders growing out of the assess-

ment are paid in full and if and when all liability of stock-holders, equally and ratably, for the debts of the bank are paid in full to the amount of double the par value of their stock, and when all other assets of the bank are liquidated and the total assets are distributed to the creditors, there will still be due to the creditors of the bank a sum in excess of $10,000.

The defendant filed an answer denying that at any time in the complaint mentioned he was the owner of 10 shares, or any shares, of the bank. No other allegations being denied, they are therefore admitted, so the only question of fact is the defendant's ownership of the stock, and the only question of law is his liability as a stockholder under the above facts. After the defendant filed his answer, he filed a general demurrer, which was overruled, and on taking evidence, judgment was rendered against him.

As to the defendant's ownership of the stock, he bought and paid for it and a certificate of stock was issued and delivered to him. He testified that he had sold the stock to his brother and signed and turned over the certificate to him. There was some desultory discussion or correspondence about the stock being transferred on the books of the bank to his brother, but this is immaterial, because it never was in fact transferred or presented for transfer, and at all times the defendant remained the record owner on the books of the bank and this he knew. Furthermore, in 1917 and 1920, the defendant gave a proxy to vote his bank stock at certain stockholders meetings. In both of the proxies, the expression, "to vote for me" was used; in the 1920 proxy, he referred to "my stock." He did not need to and could not have given a proxy to vote the stock if he did not own it. His status as a stockholder remained unchanged when the assessment was made. One cannot be the owner of bank stock for the purpose of giving a proxy and participating in the benefits of ownership, if there are any, and at the same time not be an owner for the purpose of avoiding stockholders liability. We conclude that the trial court was right in finding the defendant to be the owner of the stock.

The statute under which the officers of the bank made the pro rata assessment of 50 per cent of the par value of the stock is C. L. 1921, § 2681, and reads as follows: "When the capital of any incorporated bank is impaired, the board of directors of such bank shall make a pro rata assessment upon the stock of said bank to make good such deficiency. If any stockholder fails or neglects to pay the amount of such assessment against his stock on or before thirty days after notice thereof, an action may be commenced by said bank to recover the same."

The defendant contends that this assessment should have been made by the officers of the bank. The contention is without merit; the pleadings and proof both show that the assessment was in fact made by the officers of the bank, and it would be idle and profitless for us to speculate on what the effect might have been under different conditions.

The defendant further contends that the bank commissioner has no right to bring this action, but the fact is, it was not only his right, but it was also his duty to do so. As to banks in the hands of the state bank commissioner for the purpose of liquidating their affairs, it is provided by C. L. § 2730, among other things, as follows: "The state bank commissioner may retain possession of any bank for the purpose of liquidating its affairs. He shall, in such event, have power, and it shall be his duty, to collect all debts, dues and claims belonging to the bank. * * *"

Was this a debt, due or claim belonging to the bank? It was. It became so when the assessment was lawfully made. After the bank commissioner took charge of the bank for the purpose of liquidating its affairs, the hands of the officers of the bank were tied; the bank commissioner was in control. It would be strange to say that the debts and claims of the bank were wiped out by the mere fact that the bank commissioner took control. They were not. As a public officer he took them as he found them, under his powers and for the purposes set forth in the statute.

The defendant further claims that C. L. § 2681, does not give the right to sue for a personal judgment, but only to sell the stock to foreclose a lien thereon, and citations from other states are offered in support thereof. The citations are not in point; the statutes are different from ours, but even if they were the same, the language of C. L. § 2681, is clear that an action may be commenced to recover the assessment. The purpose of this section of the statute is to make good impaired capital and to permit an action to enforce payment of the assessment if necessary. This is what was done. The impairment of the capital and the insolvency of the bank are admitted. The impairment could not very well be made good by any futile effort to sell or put on the market the stock of an insolvent bank. The contention is without merit.

A stockholder of a bank assumes a contractual liability when he becomes a stockholder. The terms of his contract are largely statutory and the liability of the defendant here is clear. Such being the case, it is unnecessary to note other points raised.

The supersedeas is denied and the judgment affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE BURKE concur.