No. 10,823.

GILLETT, AS RECEIVER, ET AL. *v.* MOORE.

Decided January 7, 1924.  Rehearing denied February 4, 1924.

Action by a shareholder in a national bank to recover the amount paid on an alleged illegal assessment.  Judgment for plaintiff.

*Reversed.*

*On Application for Supersedeas.*

1.  BANKS AND BANKING—*National Banks—Assessments.*  Under the

provisions of section 5205 R. S. U. S., providing for levying assessments on national bank shareholders, no assessment is valid unless sanctioned by the shareholders of the corporation.

2. PAYMENT—*Voluntary—Recovery*. Recovery of money paid, on the ground of mistake, where permissible at all, is for mistake of fact, and not of law or other erroneous judgment.

3. BANKS AND BANKING—*National Banks—Shareholders—Assessments*. A shareholder of a national bank is charged with knowledge of the law, that only the shareholders can make a valid assessment under the provisions of section 5205, R. S. U. S.

4. RECEIVERS—*Banks—Assets*. The receiver takes the assets of an insolvent bank as a mere trustee of the creditors, and in the absence of a statute to the contrary, subject to all claims and defenses that might have been interposed as against the corporation.

5. BANKS AND BANKING—*National Banks—Illegal Assessments—Recovery*. Where the directors of a national bank make an unauthorized assessment against the shareholders to restore impaired capital and ˙prevent liquidation, a shareholder who pays his assessment under the impression that the directors had authority to make it, cannot recover—a receiver having been appointed for the corporation—except out of the assets remaining after all the general creditors are paid, and then he, with· other paying shareholders should be preferred as to the remaining assets, as against nonpaying shareholders.

6. ESTOPPEL—*Pleading*. The general rule is that estoppel in pais must be pleaded specially; but a party may avail himself of an estoppel, though not specially ·pleaded as such, if the facts constituting it are pleaded and proved by either party.

*Error to the District Court of Logan County, Hon. L. C. Stephenson, Judge.*

Mr. T. E. MUNSON, for plaintiffs in error.

Mr. W. MABRY KING, Messrs. COEN & SAUTER, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS action is by a shareholder against the Sterling National Bank and its receiver, in possession of its assets after insolvency, to establish, as a preferred claim, ahead of. general creditors, the amount of money paid by him under an illegal assessment, levied by its board of directors, to make good an impairment of the bank's capital, or to replace worthless with good assets. Upon plaintiff's motion for judgment on the pleadings, the court made the claim a preferred one. The material facts, which are admitted by the motion for judgment, are that, as the result of an examination of its books and affairs by a bank examiner, made early in November, 1922, it was discovered that notes of the bank to the amount of about $100,000, which were being carried as assets, were worthless. Exercising the power granted by the federal statute in such cases, the examiner informed its officers that the bank would be closed and a receiver appointed and its affairs liquidated, unless, within a designated time, these worthless assets were replaced by cash or bankable notes. Thereupon its board of directors, without the approval or sanction of its stockholders, apparently assuming that it had such power, levied a purported assessment against the stockholders of 86 per cent of the par value of their stock. Treating this levy as a compliance with the demand of the bank examiner, the comptroller withheld the threatened contingent order of involuntary liquidation, and permitted the bank to continue its regular banking business, which it did until December 1, 1922, on which day, because of a run by the depositors which it could not satisfy, its doors were closed and receivership followed.

Before the bank was closed some of the shareholders did, and others did not, pay the assessment. On November 8, plaintiff, who owned forty shares of the capital stock of the par value of $4,000, acting upon the mistaken belief that the board of directors was vested with the power to make the assessment, complied therewith by giving his note to the bank in the sum of $3440, and thereupon the bank,

while it was still open for business under the permissive order of the comptroller and before it was closed on December 1, and in the regular course of business, immediately transmitted the note to the National Park Bank of New York City as collateral security on its indebtedness to the New York institution. Thereafter, on November 15, plaintiff paid to the Sterling bank the principal of the note and the accrued interest, which amount it did not commingle with its other funds but immediately, on payment thereof by the plaintiff, sent it to the New York bank to be, and it was, applied on the Sterling bank's indebtedness, and the note of the plaintiff, thus paid, was returned to the Sterling bank and by it cancelled and delivered to the plaintiff. After the receiver qualified, the plaintiff presented his verified claim for the money theretofore paid by him on this assessment and asked that the same be allowed as a preferred claim against the bank and as against the assets in possession of the receiver. The receiver refused to allow the claim, in whole or in part, or to make the same a preferred claim, and gave as his reasons therefor, that the money paid by the plaintiff on the assessment never came into his possession as receiver, and that no such claim, in any event, could be allowed against the bank, or, if allowed, could not be paid as a claim out of the assets that came into his possession until after all the creditors had been fully paid. Thereupon the plaintiff brought this action. The judgment on the pleadings was as above stated, and the defendants are here with this writ of review.

The parties are in accord, and the federal courts hold, that, under section 5205 R. S. U. S., which provides for the levying of an assessment upon shareholders of a national bank to replace worthless with good assets, or to make good an impairment of its capital, under which this purported assessment was levied, no assessment is valid unless sanctioned by its shareholders. *Commercial National Bank v. Weinhard,* 192 U. S. 243, 24 Sup. Ct. 253, 48 L. Ed. 425. In that case the action was by a shareholder against

a going bank whose assets had not passed to a receiver. A recovery was allowed. As to the correctness of this decision the parties here are in accord. They disagree, however, as to its application to the facts of this case. Plaintiff contends that the principle laid down therein fully applies in all respects where the action is against a receiver of an insolvent bank. The specific question for decision here, therefore, is: May the amount of an assessment levied by the board of directors of a national bank, under section 5205, to restore impaired capital and to prevent liquidation, without obtaining the sanction or approval of its shareholders, be recovered of, or established as a claim against, the receiver in any event; or, if it may, can it be so established as a preferred claim to be paid out of the assets that have come into his possession ahead of the general creditors, at the suit of a shareholder who paid it under the mistaken belief that such power of assessment is vested in the board of directors?

A review of some of the cases bearing on this question will be helpful. In *In Re Hulitt*, 96 Fed. 785, it was held that where shareholders of a national bank in good faith paid an invalid assessment to make good an impairment of the bank's capital, on its insolvency and the accompanying liquidation of its affairs by a receiver, such paying stockholders are to be considered creditors as against non-paying shareholders and should be repaid the amount so paid by them, after all outside or general creditors are paid, and before distribution of the remaining assets, if any, among all the stockholders. The court, on page 789, said: "When, therefore, the claims of the creditors are all satisfied, then the receiver, or an agent selected by the shareholders, will be required to distribute the remainder of the proceeds of the assets of the bank in accordance with the provisions of the statute." That means a distribution ratably. The plaintiff says that the words: "When, therefore, the claims of the creditors are all satisfied," are *dicta*, because the question of a preference was not before the

court. If the question of a preference was not in issue, still it was necessary for the court to ascertain out of what assets of the bank, if any, the claims should be paid. And when the court restricted the preference to the assets remaining after all general creditors were satisfied, this, in effect, was a decision that the claim could not, under a state of facts like the one here, be enforced as against the assets in the hands of the receiver, until all the general creditors were satisfied. If, however, the expression was *dicta* in that case, we deem it the sound doctrine applicable here upon principle and as fairly deducible from the decisions of the state and federal courts upon similar questions. The plaintiff bases his recovery, and it can be had only, upon the ground that his payment of the invalid assessment was involuntary, or, as otherwise expressed by the Supreme Court of Washington in the Duke Case, hereinafter considered, "made under business compulsion."

To the point that the payment here was involuntary, plaintiff cites *Brown v. Tillinghast,* 84 Fed. 71, where, on page 72, the Circuit Judge said on this point: "I hold that a payment is not a voluntary payment if made under an erroneous belief on the part of the payor as to a liability to pay, which in fact did not exist, and that money paid under a mistake as to the facts affecting a supposed liability may be recovered back." And to this the learned judge cited *United States v. Barlow,* 132 U. S. 271, 10 Sup. Ct. 77, L. Ed. 346. It is to be observed that the quotation, though possibly ambiguous, might permit a recovery if the same was made by the payor under a mistaken belief that the law, upon admitted facts, imposed a liability. In other words, that if a payment is made as the result of a mistake, consisting of an erroneous belief as to the applicable law, its recovery may be had. The citation to the Barlow Case does not bear out the conclusion of the Circuit Judge in the Brown Case. The Supreme Court of the United States, in the syllabus of the Barlow Case accurately shows what that tribunal decided. "Money paid by the Post-Office Depart-

ment to a contractor for carrying the mails under a clear mistake of fact, and not through error in judgment, may be recovered back." Mr. Justice Field in that case cited as authority the statement made by Baron Parke in *Kelly v. Solari*, 9 M. & W. 54, 58: "Where money is paid to another under the influence of a mistake, that is, upon the supposition that a specific fact is true, which would entitle the other to the money, but which fact is untrue, and the money would not have been paid if it had been known to the payer that the fact was untrue, an action will lie to recover it back, and it is against conscience to retain it." We find no other authority, if it be authority, than the opinion of the Circuit Judge in the Brown Case that such a payment as plaintiff made in this case is involuntary. The authorities generally say that recovery on the ground of mistake, where permissible at all, is for mistake of fact, and not of law, or through erroneous judgment.

To the facts of this case let us apply the principle. The plaintiff knew that the shareholders did not levy this assessment. As a shareholder in a national bank, and because of his relation thereto, he is charged with knowledge of the law as declared by the Supreme Court of the United States in the Weinhard Case, *supra*, that an assessment under section 5205 could not be legally made without the sanction or approval of the shareholders. Plaintiff was a shareholder himself, and must have known as a fact that this assessment was not levied by him and other shareholders. Whether the attempt was made by the board of directors or by the comptroller to make the levy is immaterial. No others than the shareholders could make it. Plaintiff's mistake was not one of fact. His action in making the payment was because of his erroneous belief or judgment that an assessment made by the board of directors was valid. It would seem unnecessary to discuss the proposition that a shareholder of a national bank is charged with knowledge of the law that only the shareholders can make a valid assessment under this section. That

is a principle that can not well be questioned.  However, in the Hulitt Case, *supra,* in referring to the liabilities of shareholders who paid on subscription contracts, in ignorance of their legal rights, it was said:  "And while, in view of their relation to the bank and their means of knowledge, their ignorance in these respects might not avail them as against the creditors of the bank, yet, as between them and the nonpaying shareholders, there certainly can be no application of the doctrine of voluntary payments."  In the Hulitt Case the court gave a preference, but it was only as against nonpaying shareholders, and such preference was to shareholders who paid an illegal assessment in ignorance of the law as to the assessing authority.  The court used the quoted language as indicating its view that ignorance of the law would not avail shareholders as against creditors.

The Hulitt Case cites with approval *Winters v. Armstrong,* 37 Fed. 508, which concerned the claim of a shareholder on a deposit which he had made on a subscription to the capital stock of the association.  There the court said that where such a deposit is intended to be used and applied towards the furtherance or accomplishment of the scheme, and it is so applied, the subscriber may not be able to recover upon the failure of the enterprise, though under the facts the recovery might have been had if the scheme had been successful.  It would seem that the same principle applies here, though the case before us is not precisely the same in its facts, because the payment of money by the plaintiff and other shareholders was made for the purpose of securing the privilege of continuing the business of the bank of which they were the equitable owners, and the bank conducted that business as the result of such payments, and the money so paid was not only paid for the purpose of, but was actually used and applied toward, the furtherance and accomplishment of the scheme of business for which the bank was organized, and, although the enterprise failed, and insolvency followed, the equities of the general creditors are superior to the equities of paying shareholders.

If, as was decided in *Winters v. Armstrong,* a subscriber to the capital stock, whose contribution is applied to the scheme, may not recover back the amount of his payment on an illegal assessment on the failure of the enterprise, why may a stockholder who pays an invalid assessment to prevent liquidation, and as a privilege for keeping the bank open, though the scheme failed, recover it back as against creditors, as a preferred claim out of the assets that come into the hands of the receiver, even though he erred in judgment that he was legally liable to pay?

True, as the plaintiff contends, a receiver takes the assets of an insolvent bank as a mere trustee of the creditors, and, in the absence of a statute to the contrary, subject to all claims and defenses that might have been interposed as against the insolvent corporation. 7 C. J. p. 843, § 820, note 85 [a]. Plaintiff presses with vigor the argument based upon this statement of the law as a premise, and says that if the bank had not become insolvent, and was prosecuting its regular business by its officers, he could recover the amount of this illegal assessment. That, also, may be true. Nevertheless, as the payment by him and other shareholders was made for the purpose of preventing, and secured an exemption from involuntary liquidation, if the rights of the general creditors are injuriously affected, they are not to be sacrificed to the interests of the shareholders, for whose benefit the bank was permitted to do business, during which time and before the plaintiff sought relief, the rights of the creditors attached.

As we read the able opinion of Mr. Justice Matthews in *Delano v. Butler,* 118 U. S. 634, 7 Sup. Ct. 39, 30 L. Ed. 260, it is applicable to this case, and decisive against the plaintiff's contention. In the opinion there two cases, consolidated for hearing as one case, were disposed of. One was an action at law by the receiver of a national bank to enforce the liability of a shareholder under section 5151 for an amount of 100 per cent of the par value of his stock levied by the comptroller for the benefit of creditors. The

other was a suit in equity against the receiver by the shareholder to restrain the prosecution of this law action, on the ground that, if his legal defenses failed, he had in equity already performed and extinguished his statutory obligation under that section of the statute. The supposed equities were that the shareholder owned only thirty, instead of sixty, shares on which the assessment was made—thirty of the sixty being part of an illegal increase of the capital stock—and that on the thirty shares which he owned he had voluntarily paid, under an assessment authorized by section 5205, supposing that he would thereby extinguish his liability under section 5151, the amount he paid being equal to the par value of his stock, the bank being then insolvent, and the money paid was all used in payment of its debts. The facts of that case are not in all respects exactly like the facts of this case. In the Delano Case the shareholder admitted that he voluntarily paid the assessment made under section 5205, while the plaintiff shareholder in this case says that his payment was involuntarily made through an erroneous judgment of the applicable law. But we have already said that this payment was voluntary, and for that reason we see no difference, in principle, between the facts of this and the Delano Case. The court there held that the increase of stock was illegal, and that the stockholder could not have been compelled to take and pay for the new shares; yet when he did pay the amount upon the thirty original shares, which he admitted he owned, and also upon the additional thirty shares, which was an illegal increase, it was not open to him, after insolvency and the appointment of a receiver, to say that he made the payment in ignorance of the facts, or in ignorance of the legal right which he now seeks to assert to avoid his legal obligation. In language which is strikingly applicable to the facts of the present case, Mr. Justice Matthews, page 652, said:

"His payment was voluntary; it was made either with actual knowledge of the facts, or with such opportunity and

means of knowledge as, by the exercise of common dili-
gence would have made him acquainted with the facts, and
the payment made by him in conjunction with his co-stock-
holders was made upon a distinct consideration, whereby
the bank in which he was interested was enabled to under-
take anew its regular active business. Such a course of
action on his part must be construed to constitute a com-
plete acquiescence in and ratification of the previous action
of the association, and the Comptroller of the Currency,
in reference to the increase of the capital stock."

The court, after saying that the conclusion reached was
not weakened by the suggestion that the affairs of the bank
were, more or less, under the supervision of the Comp-
troller of the Currency acting through the bank examiner,
thus proceeded:

"Nor is the conclusion affected by the other considera-
tion, also urged in argument, that the attempt to revive
the business of the bank by means of the assessment proved
unsuccessful and abortive. The association, through its
directors and stockholders, undertook the task, and entered
upon its accomplishment, and in doing so materially
changed its relations to its creditors. The failure to prose-
cute its business successfully certainly cannot have the
operation now claimed for it, of making illegal all that was
done in the prosecution of the experiment. The hazard of
failure must be presumed to have been in the contempla-
tion of the stockholders when they consented to the risk,
and the consequences of failure cannot now be shifted from
themselves to their creditors."

In the Delano Case one object of the shareholder in his
suit was to set off as against his liability under section
5151, which was for the benefit of creditors, the previous
payment which he had made, under section 5205, which
was made for the purpose of restoring loss of capital, and
as a consideration for the privilege of continuing to do
business. But the court there said that could not be done.
The plaintiff here concedes this was rightly decided, but
says the ruling does not apply to the present case, because

the plaintiff admits that he is liable under section 5151 for the amount of the full par value of his stock, but says, nevertheless, that he has a preferred claim against the funds in the receiver's hands, which consists, in part, of the money raised by such levy. In the Delano Case the court held that the assessment under section 5205 is voluntary and that under section 5151 is involuntary, and that the former could not be set off as against the latter. In the present case it is true the plaintiff does not in terms ask for such set-off, but he seeks to have the amount which he voluntarily paid on the illegal assessment under section 5205, made a preferred claim over creditors as against the bank's assets, contributions to which are made by assessment under section 5151, which belong to creditors only. This, in effect, would be, as said by Mr. Justice Matthews in the Delano Case: "If the claim in the present case were allowed, it would follow that in every case payments made by stockholders, for the purpose of restoring the impaired capital, would be considered as credits on the ultimate individual responsibility of shareholders, and the whole efficiency of the provisions of § 5151 for the protection of the creditors of the company at the time of liquidation would be destroyed."

In the Delano Case, as here, the shareholder vigorously contended that his equity rested upon the fact that the money paid by him under the assessment was, in fact, applied to the satisfaction of the debts of the bank, and that he paid it in the belief that it would exonerate him from further liability as a stockholder. The court to this contention said, if the assessment was applied by the bank to the satisfaction of the debts, there was nothing to show that it had done so ratably as required by section 5151. The assessment there, as here, was not paid for the purpose of effecting a liquidation of the affairs of the bank, but it was understood to be the price paid for the privilege of continuing its business, in the hope of saving the investment of the shareholders. In that case, as here, and it is controlling, any mistaken supposition by a shareholder in

making such payments was not brought about by any misrepresentations, either of fact or law, on the part of the creditors for whose benefit the receiver is acting.

It seems to us, under the authority of the Delano Case, there can be no recovery by plaintiff in this action as against the receiver, as the representative of the creditors, except out of assets remaining after all the general creditors are paid, and then the plaintiff and other paying shareholders should be preferred as to the remaining assets as against nonpaying shareholders; and we so hold. But let it be assumed, but not decided, that the payment by the plaintiff of the invalid assessment was involuntary in the legal sense. In *Duke v. Force,* 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354, only the statutes of Washington were construed, but they are, in all substantial respects, so like sections 5205 and 5151 R. S. U. S., the controlling statutes here, that we think the Washington decision is authority for our conclusion that plaintiff's claim may not be established as a preferred claim against the assets of the Sterling bank in the hands of the receiver. It may be true, at least in part, as plaintiff says, that the Washington decision was based upon an estoppel *in pais,* or upon a principle in the nature of an estoppel. No estoppel was pleaded in this case. The general rule is that an estoppel *in pais* must be specially pleaded. This court has so decided in several cases. Yet, it has also decided (*Field v. Kincaid,* 67 Colo. 20, 25, 184 Pac. 832), though not commending the practice, that a party may avail himself of an estoppel, though not specially pleaded as such, if the facts constituting it are pleaded and proved by either party. In *Gilette v. Young,* 45 Colo. 562, 566, 101 Pac. 766, evidence furnished by a party may estop him though the estoppel is not pleaded. Therefore, if the facts set forth in these pleadings and admitted by the motion for judgment on the pleadings, constitute an estoppel, defendants may avail themselves thereof, though not specially pleaded as such.

In the Duke Case the Supreme Court of Washington, after adverting to the fact that different courts differ as to

whether such a payment as this was voluntary or involuntary, and after saying for the purpose of the opinion: "Payments made under what, for lack of a better term, we may call business compulsion are to be held to be involuntary payments," and, without determining absolutely whether such payments were voluntary or involuntary, proceeded as follows: "But even though these assessments were illegal and were involuntarily made, it does not follow that the stockholders may escape their superadded liability, or recover a judgment which would result in their participation with the creditors as claimants against the insolvent bank. The payments which the stockholders made resulted in the Scandinavian-American Bank continuing to function for a period of over a year thereafter as a bank; additional liabilities were incurred, as the pleadings in these cases show, and, of course, the depositors changed their relationships, relying upon the addition made by these stockholders to the funds of the bank; the bank's customers entered into new obligations, and the status of the business of the corporation was materially affected as a result of these payments. New contracts, debts and engagements accrued. Were the question only between the corporation as such and these stockholders it would be different from the question which is now presented between these stockholders and the creditors. After having been compelled to make an involuntary and illegal payment, a stockholder, if he had acted promptly, would be allowed to recover the amount of such payment; but after the rights of creditors have been affected, new creditors come into existence, and old creditors have changed their status, it is too late for the stockholders, after the result has proven that the assessments they paid in anticipation of a successful corporate life were unsuccessful, to now assert their rights, and they must be held to be estopped by their conduct from that assertion. Under these circumstances, it is not too rigid a rule to establish that prompt action upon their part was necessary in order to preserve their rights."

In the Washington Case the bank, after the payment by shareholders of illegal assessments, remained open and continued in business for a longer time than the Sterling bank did in the instant case, but the shareholder did not take action promptly, although he may have done so when he first discovered his alleged mistake. This, however, was, as here, after the bank ceased business and was in the hands of a receiver, and the rights of the creditors, including the depositors, had attached, and that court held that the shareholder was estopped to assert his rights as against the general creditors. In seeking a preference, the length of time which a failing bank continues its regular business under such permissive order is not the controlling factor. The rights of creditors, including depositors, are to be considered.

Plaintiff further contends that the citation made from the Washington Case is not applicable or pertinent here, because the material facts upon which the decision there rested appeared from the pleadings, and such, or a similar state of facts do not appear in these pleadings. Plaintiff says that there are no facts in this record, either in the pleadings or elsewhere, that new rights accrued or different relations were established, or that new creditors came into existence, or that old creditors changed their status. Not so. We think it is a fair inference, from the admitted facts in this case, that after the Sterling bank was permitted by the comptroller to continue in business after the early days of November, as the result of payments by shareholders of an invalid assessment made by its board of directors, deposits were received, new creditors came into existence, the status of old ones changed, and this must necessarily be so. In the absence of evidence to the contrary, we are justified in presuming that such conditions existed in the present case as were stated by that court. During this period the bank transacted its regular business just as it did before; depositors put money into the bank and drew money out; notes were given; notes were paid; the bank received payments on its loans and

made payments on its own liabilities; it discounted commercial paper; issued and sold drafts. Necessarily new rights accrued, different relations were established, new creditors were created, and the status of old ones must have changed. Indeed, the fact is that this very money which the plaintiff paid on an illegal assessment, according to his own contention, was applied by the bank on a single debt it owed to the New York bank. If plaintiff's view was right, this was a preference to the New York corporation and not a payment to creditors ratably. This money could not, of course, have been paid to the New York bank, by the Sterling bank, unless he had paid it to the latter. It was paid in, along with other like sums, to prevent insolvency and a receivership, and it was not paid out ratably among the creditors in liquidation. This shows of itself that the conditions described by the Supreme Court of Washington, upon which the estoppel there was predicated, were created and arose in the instant case.

For still another reason we think the judgment is wrong. Assuming with plaintiff that, if the money paid upon this illegal assessment came into the possession of the receiver and to that extent augmented or increased the assets of the insolvent estate, plaintiff might be entitled to the appropriate judgment. It is not necessary under the established rule in this jurisdiction that money may not be traced as a trust fund, although it has no earmarks. If the money which plaintiff paid on the illegal assessment to the Sterling bank had been commingled with its funds generally, and afterwards, thus commingled, had come into the hands of the receiver, if, in other respects, this constituted a trust fund which plaintiff is entitled to recover, the fact that the identical money was not in the hands of the receiver is not important. In this case it is alleged in the answer, and admitted by plaintiff, that when this money was paid by the plaintiff to the Sterling bank for the purpose indicated, it was at once transmitted to the National Park Bank and applied upon the indebtedness of the Sterling to the New York bank. This was not a payment

ratably among creditors, but was a preference in favor of the New York Bank. The money never came into the possession of the receiver. Though this payment to the New York bank may have decreased the total indebtedness of the Sterling bank, the assets of the bank which came into the hands of the receiver were not thereby augmented. The reduction of the Sterling bank's indebtedness, resulting from the application of plaintiff's money, did not increase the fund which actually came into the hands of the receiver, and none of it, therefore, increased or swelled the assets that he received, and out of which the creditors must be paid, if at all. None of this money came into the hands or possession of the receiver. The bank did not pay it to the creditors of the bank ratably, but applied all of it in payment of a single debt.

The application for *supersedeas* is denied and the judgment of the district court must be, and hereby is, reversed and the cause remanded with instructions to vacate the same and, in lieu thereof, to enter a judgment against the bank awarding plaintiff the amount of his claim, to be paid by the receiver, if at all, only out of the remaining assets, if any, after the general creditors, including the depositors, are paid in full, and ratably out of such remaining assets with other paying stockholders of such assessment, if any, as against the non-paying shareholders.