BROADBENT, ET AL. *v.* McFERSON.

No. 11,393.

SILLIMAN *v.* McFERSON.

No. 11,394.

CLOSE *v.* McFERSON.

Decided November 22, 1926.

Action by bank commissioner to recover from stock-holders of a bank, amount due on assessments, and under their statutory liability.   Judgment for plaintiff.

## *Affirmed.*

1.   BANKS AND BANKING—*Commissioner—Duties.*   Under the provisions of sections 74 and 83 of the Banking Act of 1913, it is held it was the duty of the commissioner to institute proceedings to recover upon stockholders' statutory liability, and assessments, even after the date to which time to pay final dividend had been extended.

2.        *Insolvent Bank—Court Powers.*   Under the Banking Act of 1913, there is no restriction placed on the power of courts to make orders extending the time for settling the affairs of an insolvent bank, and no limitation of time the bank commissioner shall have to liquidate its affairs.

3.        *Assessment—Fund.*   Fund created by assessment on bank stock-holders held not to be a liability of the bank, nor could the bank officials change the character of the fund by any book entries.

4.        *Stockholders—Assessment—Statutory Liability.*   Stockholders of an insolvent bank held not to have a preference on a fund created by assessment on the stock, neither could the stockholders who had paid their assessment be given credit therefor on their statutory liability.

5.   PARTIES—*Banks and Banking—Commissioner.*   The contention that the bank commissioner is not the real party in interest in bringing action against bank stockholders to collect assessments and amount due under their statutory liability, overruled.

6.  STATUTES—*Amendment—Banks and Banking.* Section 2729, C. L., is not an amendment of the Code, and the Banking Act of 1913, is not a local or special law.

7.  OFFICES AND OFFICERS—*Evidence—Presumption.* The presumption is that every public official will do his duty, and if he does not, there is a remedy.

8.  CONSTITUTIONAL LAW—*Courts.* Before a law can be declared unconstitutional it must appear clearly and beyond a reasonable doubt to be so.

9.  *Title of Act.* A title which states the general subject of an act is sufficient, and all matters germane to the subject are included within the title.

10. BANKS AND BANKING—*Constitutional Law—Title of Act.* Title of the Colorado Banking Act of 1913, held sufficient to cover sections 39 and 74 thereof, the subject matter of which is clearly germane to the title.

*Error to the District Court of Crowley County, Hon. James A. Park, Judge.*

Mr. W. L. HARTMAN, for plaintiffs in error.

Mr. CHARLES M. ROSE, Mr. LEO P. KELLY, for defendant in error.

*En banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

ON October 7, 1921, and for some time prior thereto all the plaintiffs in error, who will be herein designated as the defendants, were stockholders in the Citizens State Bank of Ordway, a Colorado corporation having a paid up capital of $25,000, divided into 250 shares of the par value of $100 each.

On August 24, 1921, the defendant in error, as state bank commissioner, herein designated as the plaintiff, notified the president of the Bank, Nelson, to call a meeting of the directors of the bank within five days, and or-

dered that an assessment of 50 per cent be levied, to be paid in cash (no notes or securities accepted), the assessment to be collected in full within thirty days, or at least by October 1, at which time the plaintiff would select such paper to be charged off to balance the amount of the assessment.

Pursuant to that order the board of directors met, and for the purpose of restoring or repairing the capital and surplus of the bank, which the resolution of the board said was, or might become, impaired, on August 29 made an assessment of 50 per cent pro rata on all of the $25,000 par value of the capital stock of the bank then outstanding, the assessment amounting to $12,500, to be paid within thirty days after mailing or delivering notices thereof to the stockholders. Thereafter and until and including October 7, the assessment was in process of collection.

The bank closed its doors and ceased to do business on October 8, and all its property and assets were taken over by the bank commissioner.

In the examiner's report made on October 10, as to the condition of the bank at the close of business on October 7, there occurred an item, under heading "liabilities," designated "8 Trust Funds Assessment $3,900." This item was copied by the deputy state bank commissioner from an account known as the assessment fund in the general ledger. In the "Inventory of the Assets and a Schedule of the Liabilities" filed by the deputy state bank commissioner, under the heading "liabilities" there appears an item designated "Assessment Fund $3,900."

In the current journal of the bank were entered the names of the stockholders who had paid the 50 per cent assessment, with the amounts paid by each, and designated "Assessment Fund"; also in the daily statement book of the bank there appeared item 35 under the title "Assessment Fund" the first payment made being on September 7, 1921, and the last October 7. The amounts paid in were entered daily and totaled $3,900, although

this amount was later reduced to $3,650, by reason of payment being stopped on one check of $250.

On and prior to March 3, 1923, all the property and assets of the bank which were taken over by the commissioner had been collected and reduced to cash ready for distribution, and the special deputy bank commissioner was discharged. Dividends were declared and paid by plaintiff as follows: August 26, 1922, first dividend, 20 per cent; December 30, 1922, second dividend, 10 per cent; November 19, 1923, third dividend, 15 per cent.

On October 4, 1922, upon petition of plaintiff, the court entered an order extending the time until April 8, 1923, within which plaintiff could declare and pay a final dividend to the creditors of the bank.

On September 22, 1924, upon the application of plaintiff the court extended the time for the liquidation of the affairs of the bank and the payment of a final dividend, to and including July 1, 1925. On June 22, 1925, a further extension of time to January 1, 1926 was entered by the court.

After April 8 and up to the time of the institution of these suits, plaintiff had in his hands money not distributed; he had not collected the statutory liability of the shareholders; he had not collected the 50 per cent unpaid assessment; he had declared and paid no final dividend; he had not returned any property of the bank to the stockholders; he had called no final meeting of the shareholders, and he had not been discharged from liability. At the time of the trial, June 29, 1925, plaintiff still had in his hands a cash balance of $2,967.65.

In case No. 11392, commenced June 25, 1923, all defendants except Silliman and Shriver had paid $150 of the $200 per share theretofore demanded of them on their statutory liability as stockholders of the bank, but refused to pay the balance, claiming a credit thereon for the 50 per cent assessment paid by them, and this suit was brought to recover that balance, and also against Silliman and Shriver to recover the full amount of their

statutory liability, they having paid nothing thereon, nor had they paid the 50 per cent assessment. As to the two last named, no question of credit or set-off is involved.

Suits Nos. 11393 and 11394 were brought against Silliman and Close respectively to recover the amount of their 50 per cent assessment; the Silliman case was commenced in September, and the Close case in May, 1924. The three cases were consolidated and tried together.

The foregoing are the essential and controlling facts presented by the record, but if further facts need be considered they will be stated in connection with a discussion of the various points raised by defendants.

Trial to the court, without a jury; findings and judgment in favor of plaintiff, and defendants bring the cases here for review. The three cases will be considered together, and this opinion will dispose of all of them.

The defendants contend:

1. That the action of plaintiff in instituting these suits was not only without permission or authority of law or of any order of court, but was in violation of both. In other words, that plaintiff was not authorized nor permitted by law to act after April 8, 1923, and after that date his possession of the funds belonging to the creditors of the bank was unlawful and wrongful.

2. That the statutory liability of stockholders is not an asset or property of the bank, and the plaintiff was without authority to sue therefor, except while the bank was in his possession, and not even then if section 74 of the Banking Act of 1913 (Sec. 2729, C. L. 1921) is unconstitutional.

3. That the bank was not kept open by reason of the 50 per cent assessment; that the assessment fund should be made available for preferred claims of the stockholders who contributed to that fund or, if used by plaintiff in payment of the bank's creditors pro rata, the stockholders contributing to that fund should be given credit on their 200 per cent liability created by section 39 of the Act of 1913 (Sec. 2696, C. L. 1921).

4. That the last sentence in section 74 of the Act of 1913 (Sec. 2729, C. L. 1921) is unconstitutional, as being violative of section 21, art. V; section 3, art II, and section 25 of art. V of the state Constitution.

Plaintiff's contentions 1 and 2 will be considered together. It is urged in argument that construing sections 74 and 83 together, the time within which the bank commissioner may lawfully sue stockholders, cannot extend beyond one year, except where the time has been extended by the court for good cause shown; that when the additional time, granted by the court on October 4, 1922, expired on April 8, 1923, the official power of the plaintiff automatically ceased, and thereafter he was without lawful authority to institute these proceedings; that the court was without authority or jurisdiction to enter the order of extension September 22, 1924, or any other subsequent order of like character. That portion of section 74 involved here reads: "No creditors shall maintain any action to recover upon a stockholder's liability while a bank is in the possession of the state bank commissioner, but during such time said commissioner shall have the sole and exclusive right to maintain such action."

Section 83 is as follows: "From time to time, and with the approval of the district court of the district wherein said bank is located, the state bank commissioner shall, out of the funds remaining in his hands after the payment of all expenses, declare one or more dividends. He shall, with the approval of said court, within one year from the date of first publication of notice to creditors, declare a final dividend, unless additional time is granted by the court for good cause shown."

From the facts stated, and assuming the validity of the quoted portion of section 74, we think it sufficiently appears that plaintiff was rightfully in possession of the bank after April 8, and had the right, and that it was his duty, to institute these proceedings to recover upon the stockholder's statutory liability, and also to recover the assessments.

By the orders of the court granting extensions entered subsequent to April 8, the court clearly recognized plaintiff's right to remain in possession of the bank, and his right to defer payment of a final dividend, even though he had discharged his special deputy and had given up the bank building where he had been closing up the bank's affairs since taking possession.

The court had jurisdiction to make the orders of extension, notwithstanding the limitation contained in section 83, for as we read the statute the limitation therein mentioned relates only to the time in which a final dividend shall be paid. There is no restriction placed upon the power or authority of the court to make other or additional orders for extension, nor as to the time other such orders may be made, and no limitation of the time the bank commissioner shall have in which to liquidate the bank's affairs.

Section 52 of the act, after providing that any bank may place its assets and affairs in the possession of the bank commissioner, further provides: ''No business shall be transacted by such bank after such notification and the posting of such notice. The state bank commissioner shall immediately take possession and assume control of all the property and assets of such bank.''

By section 84 of the act, the bank commissioner is not required to call a final meeting of the stockholders until he shall have satisfied all claims against the bank or shall have disbursed all funds in his possession, and the delivery of the property of the bank to the stockholders refers to a time subsequent to the liquidation of the bank's affairs by the commissioner.

The legislature must have intended to invest the district court with full supervisory jurisdiction over the bank commissioner during the time he is engaged in the liquidation of the affairs of the bank. The language used in sections 75, 81, and the first sentence of section 83, clearly indicates this.

The assessment of 50 per cent was made by the bank directors. It was made for the sole purpose of restoring the impaired capital of the bank, and was due to the bank, not to the creditors. The plaintiff had decided that the capital was impaired, and ordered the assessment. The directors of the bank had declared that the bank's capital was, or might become, impaired. True the assessment was not sufficient, but that cannot alter the situation. This fund, when paid in, could not, by any process of reasoning, become a liability of the bank; neither could the plaintiff, nor the officers of the bank change the character of that fund from an asset to a liability by an entry on the books of the bank. After this assessment was levied the bank remained open and continued to transact business in the usual way from August 29, to and including October 7.

We said in *Gillett v. Moore*, 74 Colo. 484, 223 Pac. 21, the assessment was the price paid for the privilege of continuing the bank's business. In that case the assessment was made early in November, for the purpose of restoring the impaired capital of the bank, and the bank remained open and continued to transact business until December 1.

In the instant case, during the period between the date of the assessment and the date the bank closed its doors, some of the stockholders paid their assessment and some did not. Doubtless the payments made enabled the bank to continue its usual business, and during that period the situation changed; the number and character of the bank's creditors and the total amount of its indebtedness changed, and there were different assets and debtors. And, as said in the Gillett case, supra, this must necessarily be so.

It is contended by defendants "that if the assessment was applied to the payment of the bank's debts ratably the stockholders paying such assessment would be entitled to credit therefor as so much paid on their superadded liability as stockholders," and further that the

evidence shows that the assessment collected up to the time of the closing of the bank "was a trust or special fund, which was turned over to the state bank commissioner, and which was received by him as such and receipted for and treated as a special fund throughout the liquidation of the bank's business and assets; and that fund swelled the amount of the funds in the hands of the state bank commissioner which he distributed to all the creditors of the bank pro rata."

We think this contention of defendants is based upon the bookkeeping of the bank officials and the way in which the assessment fund, when paid in, was entered upon the books. Reliance seems to be placed chiefly upon Exhibits P and Q. Exhibit P contains a statement of cash collections and disbursements from the date of closing to June 16, 1925. Under the head of "Collections" it shows "Profit and Loss," "Dividends Paid" and "Cash on Hand"; under "Disbursements" it shows, among other things, "Assessment Fund" and followed by a certificate of the plaintiff that the foregoing was a true and correct transcript of the account of the bank from April 11, 1922 to date, June 16, 1925.

Exhibit Q was a report by Reimold, special deputy state bank commissioner, showing the disposition of the assets of the bank by him. It shows "Assessment Fund," followed by a statement of the condition at the close of the books March 16, 1923. This report shows the "Amount on Hand," "Profit and Loss," "Dividends Paid," and, among the liabilities, "Assessment Fund."

The general finding of the court must have included the findings that the funds received by the bank from the assessment were not kept separate from other funds of the bank; that these funds were treated as other assets of the bank; that they were used as other money and property of the bank in the transaction of its daily business, and that it did not appear that any of that fund was used in the payment of the debts of the bank. The evidence appears sufficient to justify the findings.

In the circumstances disclosed here, we do not think the stockholders can claim a preference, nor that the assessment fund should be held available for the satisfaction of such claim, as contended for by defendants; neither do we think that those stockholders, who paid their assessments, should be given credit therefor on their statutory liability.

It cannot alter the situation that the assessment was insufficient for the purpose for which it was levied, for we held in the Gillett case, supra, that, ''Although the enterprise failed, and insolvency followed, the equities of the general creditors are superior to the equities of paying shareholders.'' In that case, while it was held that the payment by the shareholder was voluntary, we recognized and approved the doctrine declared in *Duke v. Force*, 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354, that, ''Even though these assessments were illegal and were involuntarily made, it does not follow that the stockholders may escape their superadded liability, or recover a judgment which would result in their participation with the creditors as claimants against the insolvent bank.''

In *Allen v. McFerson*, 77 Colo. 186, 235 Pac. 346, the defendant insisted that the bank commissioner had no right to bring the action, but the court said that it was not only his right but his duty to do so, citing section 2730. C. L. 1921 (Sec. 75 above cited). This was an action to recover an assessment, and although the only question of fact involved was the defendant's ownership of the stock, we think the questions of law there determined were necessarily involved and are decisive of the same questions here.

It is insisted by defendants that plaintiff is not the real party in interest; that the last sentence of section 74 is an amendment of section 3 of the Code, which provides that every action shall be prosecuted by the real party in interest, and therefore that the title of the Banking Act should mention such amendment; that the title of the act is not sufficiently specific to include the liability of

stockholders provided for in section 39 of the act; that the subject matter of the quoted portion of section 74 is not clearly expressed in the title of the act and the act contains more than one subject.

The argument is that that portion of section 74 takes from the stockholders and from the creditors the "natural, essential and inalienable" right of protecting their property rights and interests, and that it is a local and special law having the effect of regulating the practice in courts of justice. In this connection it is suggested that if the bank commissioner is permitted to retain possession of the bank and its assets, as in the instant case, the effect will be to permit the statute of limitations to run against the creditor, or at least shorten the time in which he is permitted to bring an action in his own behalf to recover on the stockholders' liability.

We think we fully understand the views of defendants, but we do not accept them. The plaintiff is the real party in interest, and he is authorized by the Code to institute suit, for the benefit of others, whom it is not necessary to join in the action. Section 74 is not, and was not intended to be, an amendment of the Code, and the act of 1913 is not a local or special law, and does not have the effect ascribed to it. The creditor is deprived of no right by the provisions of the act. The presumption is that every public official will do his duty, and if he does not there is a remedy.

Before we can declare a law unconstitutional, it must appear clearly, and beyond a reasonable doubt, to be so.

"We have many times held that a title which states the general subject of the act is sufficient, and that all matters germane to that subject are included within the title." *Altitude Oil Co. v. People,* 70 Colo. 452, 455, 202 Pac. 180.

In *Heilman v. Ludington,* 26 Colo. 326, 57 Pac. 1075, it was held that the title "to provide for the formation of corporations" was broad enough to cover a section which provided that every corporation should annually, within

sixty days after the first day of January, make and file with the Recorder of Deeds, a report, and a failure to do so should, except in a certain event, make the directors and trustees liable for the debts of the corporation, etc., and that the section was germane to the title, citing *Tabor v. Commercial National Bank,* 62 Fed. 383, 10 C. C. A. 429.

In *Lowdermilk v. People,* 70 Colo. 459, 202 Pac. 118, where the title of the act was "An Act Concerning Chattel Mortgages," the subject was exhaustively treated, and it was there held that certain sections which relate to the illegal sale of mortgaged property were germane to the subject, and that the title was sufficiently comprehensive to cover those sections. A further citation of authorities, we think, is unnecessary.

We are of the opinion that the title "An Act Relating to Banks and Bankers" is broad enough to cover and include sections 39 and 74 of the act, and that the subject matter of these sections is clearly germane to the title.

*Williams v. Carver,* 171 Cal. 658, 154 Pac. 472, is cited in support of the proposition that section 74 is invalid. In that case the act under consideration was entitled "An Act to Define and Regulate the Business of Banking." The section under consideration there provided, after reciting certain duties of the superintendent of banks, "and may, if necessary to pay the debts of such bank, enforce individual liability of the stockholders by action to be brought within three years after the date of his taking possession of the affairs of such bank." And it was held that the constitutional liability of the stockholders, as to which no mention was made in the act, was distinct and separate from the business of banking; that it constituted no part of the assets or business of the bank, and was therefore unconstitutional.

That case also involved a consideration of section 3 of Article XII of the Constitution of California, which provided for the personal and individual liability of stockholders of any corporation. A provision of the Califor-

nia Code provided that a creditor of any corporation might institute joint or several actions against any of the stockholders of the corporation for the proportion of his claim payable by each, and another section of the Code specified when the creditor's action should be barred. These sections were not referred to in the Banking Act.

The court further held in that case that the stockholders' liability, for which the superintendent was empowered to sue, was not the constitutional liability due to the creditor.

We think the distinction between that case and the one at bar is apparent, but if it can be construed as applicable at all, it is not in harmony with our own decisions.

No reversible error appearing, the judgment is affirmed.

MR. JUSTICE CAMPBELL not participating.