REED *et al. v.* MOBLEY, superintendent of banks, *et al.*

No. 7806. FEBRUARY 11, 1931.

*Hamilton McWhorter, Joel Cloud,* and *Shackelford & Shackelford,* for plaintiffs.

*E. W. Roberts, C. N. Davie,* and *J. F. Kemp,* for defendants.

HINES, J. Reed, Weaver, Shackelford, and Patton filed their petition against Mobley as superintendent of banks, and Watkins as sheriff of Oglethorpe County, in which they made these allegations: They are stockholders in the Bank of Lexington. In February, 1926, the capital stock of this bank became greatly impaired; and the superintendent of banks required it to make good its impaired capital stock, in pursuance of the power conferred upon him by the act of August 26, 1925. Acts 1925, pp. 119, 126; 12 Park's Code Supp. 1926, § 2267(d). At a meeting of the stockholders of the bank in March, 1926, an assessment of $100 per share was levied against each stockholder. Petitioners promptly paid to this bank the amounts required of them under this assessment, by paying to it $100 per share for each share of stock owned by them. On July 14, 1926, the bank closed its doors, the superintendent of banks took possession, and since that date all of the assets of the bank have been in his hands for liquidation. On or about October 29, 1926, Bennett, then the superintendent of banks, in order to pay depositors in this bank, levied an assessment on each of the stockholders in the sum of $100 per share; and on that date executions were issued against each of petitioners in the amounts assessed against them. These executions have been levied by the sheriff of said county upon property of each of petitioners, except Shackelford, and this property has been advertised to be sold.

The Bankers Trust Company, which owned a large number of shares dictated the policy of this bank; and before the closing of the bank all negotiations between it and the department of banking were made by that company, which is now absolutely insolvent. That company, after the levy of said assessment to restore the impaired capital of this bank, agreed with the officers, directors, and stockholders of this bank to take over all of the stock owned by any stockholder who was unwilling to pay the assessment so levied. This assessment was made for the purpose of reorganizing said bank, so that it might continue to do a banking business; and the money received from said assessment was to be used for that purpose, and for no other purpose. Petitioners and other stockholders in good faith, and in compliance with the agreement aforesaid, paid to the bank the assessments so levied upon the stockholders; and were led to believe that said assessment would be levied and collected from all of the stockholders of the bank, or that the

Bankers Trust Company would comply with and carry out the agreement aforesaid as to those stockholders who were unwilling to pay said assessment. A small minority of the stockholders of the bank paid this assessment; and the Bankers Trust Company failed to carry out its agreement by paying into this bank any amount whatsoever, which fact was unknown to petitioners until after the closing of the bank. Said bank was still allowed to function, with knowledge of its then existing status by the department of banking, until it finally closed. Under these facts the petitioners are entitled, in justice, equity, and good conscience, to have the several amounts paid in by them and each of them credited on the executions against them, and said executions should be satisfied pro tanto. These executions have been entered on the general execution docket of the county, and will be a lien on the property of each of petitioners, and a cloud upon the title to any property owned by them.

Offering to do equity, each of petitioners has tendered to the sheriff the interest on each of the executions from date of issuance, at 7 per cent. per annum, together with all costs already accrued; and they hold themselves in readiness to pay said sums at all times to the clerk of the court. In the event it should be determined they are not entitled to set off the amounts paid upon the assessments so levied to restore the impaired capital of this bank, and to a cancellation of these executions, they are in equity and good conscience entitled to have the several sums so paid declared to be a trust fund, impressed with a trust, and that said sums so paid be declared to be a preferred claim against the funds of this bank now held by the superintendent of banks, and be paid to petitioners in the respective amounts so paid by them. Each of them has filed an affidavit of illegality to the levy of the executions; and these affidavits are pending in the superior court. Petitioners pray that the sheriff and the superintendent of banks be enjoined from selling their property under said executions; that the executions be delivered up and canceled; that the several sums paid to said bank by petitioners upon the assessment to restore its impaired capital be impressed with a trust, and be held an equitable set-off against the executions; that in the event it be determined they are not entitled to have said amounts applied as a set off, the sums so paid be declared to be a preference in their favor against the funds of

said bank in the hands of the superintendent, or that may hereafter come into his hands; and that said amounts be paid to each of the petitioners as paid to the bank by each of them; and for general relief.

By amendment the plaintiffs made these allegations: The banking department waived the filing of formal claims by each of petitioners; and for this reason they did not file their claims as a preference for the amounts each had paid into the bank for the purpose of repairing its capital stock. Shortly after the bank was taken over by the superintendent of banks their claims were presented to Lifsey, the first liquidating agent of the bank, then to Compton, the present liquidating agent of the bank, and also to the superintendent of banks; all of whom agreed that the claims of plaintiffs were just, that they would be adjusted on the basis of a preference, and that it would not be necessary to file formal written claims. The banking department through its officers and agents maintained this attitude, promising adjustment on that basis, until just prior to the filing of the petition in this case. On March 1, 1926, Patton paid a voluntary assessment of $200, and transferred three shares of his stock to the Bankers Trust Company, which was done in accordance with the agreement above set out, and with the consent and approval of the superintendent of banks.

By another amendment the plaintiffs alleged that at the time of the demand by the superintendent of banks on the bank to restore its capital stock by assessment against the stockholders, the Bankers Trust Company had a central bank in Atlanta, was the financial agent and part owner of a number of banks in this State, had a very close connection with the banking department, was the adviser with the superintendent of banks as to all the banks in its chain and of which it was financial agent, was considered not only solvent but very strong financially, and was trusted absolutely by the superintendent of banks. The agreement entered into by the Bankers Trust Company and the Bank of Lexington was fully approved by the superintendent of banks; and upon this agreement and promise of said company the Bank of Lexington was permitted and ordered by the superintendent to go forward and continue to operate. The superintendent of banks accepted the agreement and promise of the Bankers Trust Company as so much

cash, and considered that done which the superintendent considered should be done by the said Bankers Trust Company on account of his faith and trust in said company. The superintendent of banks, on account of his faith and trust in it, delayed having the Bankers Trust Company pay in the amount due by it to repair the capital stock of this bank; but this was unknown to petitioners, and not disclosed to them, until they had paid in their money in good faith, believing that the superintendent of banks would require or had required the Bankers Trust Company to comply with its agreement and pay in the money of the assessment against it to make good the impaired capital of the bank.

The defendant demurred to the petition as amended, upon the grounds that (1) it set forth no cause of actions; (2) there is no equity in the bill; (3) the plaintiffs had not filed with the superintendent of banks their claims for the amounts alleged to be due by them, as required by law; and (4) the allegations of the petition do not authorize the granting of the relief prayed. The defendants further demurred specially on various grounds. The judge sustained the demurrer, and the plaintiffs excepted.

■ Can amounts paid by stockholders in a bank on an assessment levied against them to restore the impaired capital of such bank be set off against assessments subsequently levied by the superintendent of banks to pay the depositors of the bank when it became insolvent and was taken over by that officer for liquidation? This question must be answered in the negative. The payment of an assessment to make good the impaired capital of a bank is one made in satisfaction of an obligation due the bank. Acts 1925, pp. 119, 126; 12 Park's Code Supp. 1926, § 2267(d). The assessment to pay depositors in an insolvent bank, after it is taken over by the superintendent of banks for liquidation, is made to pay the liability of stockholders to depositors therein. Acts 1919, p. 189; Acts 1925, pp. 119, 133; 12 Park's Code Supp. 1926, § 2279(a). As the liability of stockholders, under an assessment to restore impaired capital, is one to the bank, and as the assessment to pay depositors is one to the latter, the payment of the former can not be set off against the payment of the latter assessment, for lack of mutuality. Debts, as a general rule, must be mutual between the same parties, to be set off against each other. Civil Code (1910), § 5668. There is nothing in the record in the present

case to take it out of the general rule. In *Swicord* v. *Crawford,* 148 *Ga.* 719 (98 S. E. 343), this court held: "In a suit brought by the receivers of an insolvent bank, chartered under the laws of Georgia since the act of 1893 (Acts 1893, p. 70), against a stockholder thereof upon his statutory individual liability to depositors of the bank (Civil Code (1910), § 2270), the defendant can not set off the amount of his individual deposits which he had in the bank when it became insolvent and ceased to operate." This principle was again announced in *Davidson* v. *Citizens Bank of Fort Valley,* 171 *Ga.* 81 (154 S. E. 775).

This ruling is in accordance with outside authorities. In Citizens Bank *v.* Needham, 120 Kan. 523, 45 A. L. R. 1202, 244 Pac. 7, it was held that an assessment of bank stock to make good an impairment of capital, and an assessment on stockholders under the double-liability provisions, subserve entirely distinct and wholly different purposes, since one is an incident of operation and the other an incident of liquidation. In Delano *v.* Butler, 118 U. S. 634, 653 (7 Sup. Ct. 39, 30 L. ed. 260), the Supreme Court of the United States held that "The assessment imposed upon the stockholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege of continuing business, and to avoid liquidation under § 5205 of the Revised Statutes, is not the assessment contemplated by § 5151, by which the shareholders of every national banking association may be compelled to discharge their individual responsibility for the contracts, debts, and engagements of the association. . . The obligations of the shareholders under the two sections are entirely diverse, and payments made under § 5205 can not be applied to the satisfaction of the individual responsibility secured by § 5151. Scovill *v.* Thayer, 105 U. S. 143 [26 L. ed. 968]." So in Andrew *v.* Farmers Trust & Savings Bank, 204 Iowa, 243 (213 N. W. 925, 56 A. L. R. 521), it was held that "A bank stockholder voluntarily paying an assessment, prior to the closing of the bank, for making good impairment of capital in accordance with a resolution of the board of directors, on suggestion of the superintendent of banks, is not entitled to credit therefor on a compulsory assessment, enforced by statutory authority making such stockholders liable to creditors on insolvency, since the two funds are for entirely distinct purposes." Where the capital of a bank has become impaired, and an

assessment against the stockholders is ordered under a statute to enable the bank to continue business, the payment of such assessment and the resumption of business by the bank do not in any manner effect a discharge of the stockholders from their general statutory liability for the debts of the bank upon its subsequent insolvency. The latter liability is designed solely for the benefit of the creditors, and constitutes a fund available when the bank is insolvent and unable to meet its obligations in full. The corporation itself has no authority over such fund, and can not compel its payment, or by any act on its part release the stockholders therefrom. It amounts for all practical purposes to a reserve or trust fund to be resorted to only in proceedings in liquidation when necessary to meet the payment of obligations of the bank. Northwestern Trust Co. *v.* Bradbury, 117 Minn. 83 (134 N. W. 513, Ann. Cas. 1913D, 69) ; 3 R. C. L. 397, § 27; Duke *v.* Force, 120 Wash. 599 (208 Pac. 67, 23 A. L. R. 1354) ; Blackert *v.* Lankford, 74 Okla. 61 (176 Pac. 532) ; 4 Thomp. Corp. § 4802; Golden *v.* Cervenka, 278 Ill. 409 (116 N. E. 273) ; Broadbent *v.* McPherson, 80 Colo. 264 (250 Pac. 852) ; Markus *v.* Austin (Tex. Civ. App.), 284 S. W. 326; Leach *v.* Arthur Savings Bank, 203 Iowa, 1052 (213 N. W. 772) ; Andrew *v.* Farmers Trust & Savings Bank, supra; Smith *v.* Goldsmith, 49 S. D. 580 (207 N. W. 978). The assessment is the price paid for continuing the bank's business. Broadbent *v.* McPherson, supra; Gillett *v.* Moore, 74 Colo. 484 (223 Pac. 21).

■ But it is insisted by counsel that if for any reason the sums paid by the petitioners to restore the impaired capital of the bank can not be set off against the executions which have been issued to enforce their liability to stockholders, then such sums so paid should be declared impressed with a trust and refunded to each of them. Counsel base this contention upon the well-known principle that trusts are implied (1) when the legal title is in one person, but the beneficial interest, either for the payment of the purchase-money, or for other circumstances, is either wholly or partially in another, and (2) where from the nature of the transaction it is manifest that it was the intention of the parties that the person taking the legal title shall have no beneficial interest. Civil Code (1910), § 3739. In support of this proposition counsel cite *First National Bank* v. *Citizens Bank,* 150 Ga. 601 (104 S. E. 426), in

which it was held that where the Citizens Bank received title to certain funds, but the equitable interest therein was in the First National Bank, the trust was implied in favor of the First National Bank, which could be enforced against the Citizens Bank. In the case at bar the title and the equitable interest to the money paid by petitioners upon the assessments against their stock to restore the impaired capital of the Bank of Lexington were both in that bank. After it received these funds petitioners had no equitable interest therein. When the bank received these funds it acquired both the legal title and the equitable interest therein. Petitioners, in sup· port of their contention, also rely upon *Buckeye Cotton-Oil Co.* v. *Citizens Bank of Helena,* 37 *Ga. App.* 421 (140 S. E. 399), and *Williams* v. *Bennett,* 158 *Ga.* 488 (123 S. E. 683). In both of those cases special deposits were made for specific purposes; and on the failure of the banks in which these deposits were made, it was held that the depositors were entitled to priority of payment of these special deposits over general deposits. These rulings were based upon the doctrine, that, while the legal title to these special deposits vested in the banks, the equitable interest in the funds deposited was in the depositors. Petitioners likewise rely upon the decision in *Bank of Dania* v. *Farmers & Traders Bank,* 169 *Ga.* 846 (151 S. E. 803). In that case a borrowing bank was taken possession of by the superintendent of banks as an insolvent institution, for liquidation; and it was held that the priority of the lending bank ranked as a contractual liability under subsection 5 of section 19 of the act of 1925 (Acts 1925, pp. 119, 129; 12 Park's Code Supp. 1926, § 2268(s). That case does not support the position taken by counsel. This court was dealing with the priority of a debt due by an insolvent bank, in process of liquidation by the superintendent of banks, to a lending bank; and it was held that the priority of the lending bank was fixed by the above provisions of the act of 1925. The difference between that case and the case at bar is that in this case no debt is shown to exist from the Bank of Lexington to petitioners, as we shall undertake to show. (Subsection 5 of section 19 of the act of 1925 is imperfectly printed in the acts of 1925, as is shown by the original act of file in the office of the Secretary of State. The printed act omits, after the word "contractual" in this subsection, the words "liabilities pro rata.") Counsel for the petitioners also rely upon *Citizens Bank*

*of Waynesboro* v. *Mobley,* 166 *Ga.* 543 (144 S. E. 119, 58 A. L. R. 1383). The question involved in that case was whether the transaction was a deposit of money with a bank or was a debt due by the bank; and this court held that the transaction did not constitute a deposit but an indebtedness from one bank to another.

In its last analysis the contention of the petitioners is based upon the theory that the payment to this bank of the assessments upon their shares of stock, to restore its impaired capital, were made for the purpose of restoring its impaired capital in full; that the payments were made in trust for this purpose only, and could not be used by the bank until its capital was fully restored; that the use of the sums paid by petitioners upon the assessments against their stock, before the sum total of the payments were sufficient to entirely restore the impaired capital of the bank, was a breach of this trust, for which the bank became liable to petitioners who paid their assessments; and that petitioners were entitled to recover from the bank the amounts paid by them on these assessments on their stock with preferences. We can not agree to this contention. When the capital stock of any bank becomes impaired or reduced as much as 10 per cent. of its par value from any cause, it is the duty of the superintendent of banks to require it to make good its impaired capital stock within 60 days, by an assessment of its stockholders. When this requirement is made, it is the duty of the officers and directors of a bank to immediately call a special meeting of the stockholders for the purpose of making an assessment upon the stockholders, sufficient for the purpose of covering the impairment of the capital of the bank, payable in cash. At any such meeting a majority of the stock outstanding shall be deemed a quorum, and such assessment may be made upon a majority vote of the quorum present. Acts 1925, pp. 119, 126; 12 Park's Code Supp. 1926, § 2267(d). As we have seen, this assessment is the price which stockholders must pay in order to prevent the liquidation of the bank by the superintendent of banks. If any stockholder refuses or neglects to pay any assessment which may be levied by the stockholders' meeting for the purpose of making good any impairment or reduction of the capital stock of said bank within 30 days after such assessment shall have been levied, the directors of the bank shall have the right to sell to the highest bidder at public outcry, for cash, a sufficient amount of the stock of such

stockholder to cover the assessment, after giving notice of the sale once a week for two weeks in the newspaper in which the sheriff's advertisements are published in the county where the bank is located. The bank shall, in addition to the right so given to sell said stock, have the right to sue the stockholder for the full amount of said assessment, in the event that said stockholder shall fail or neglect to pay the assessment so levied, in lieu of the sale of such stock, and at the option of the bank. Acts 1925, pp. 119, 127; 12 Park's Code Supp. 1926, § 2267(e). It will be thus seen that there is nothing in this statute which requires the bank to hold payments made upon assessments upon stockholders to restore the impaired capital of a bank until a sum has been received from this source which will be sufficient to fully restore the impairment. On the contrary such assessments are made payable in cash. If a stockholder fails or neglects to pay this assessment, his stock may be sold upon the terms provided in the statute, or the bank may sue the stockholder who fails or neglects to pay such assessment, for the recovery thereof.

There is no allegation in the petition that the money paid by petitioners upon the assessments of their stock was not used to restore, at least in part, the impaired capital of this bank. The foundation of the right of petitioners to defend on the ground that money paid by them upon these assessments constituted a trust fund is that such trust fund was still in existence. Taking the petition most strongly against the pleaders, the inference is that these funds were to restore the impaired capital of the bank, and took it out of the hands of the liquidating officer from March, 1926, to July 14, 1926. So we are of the opinion that the facts alleged in the petition do not show a trust in favor of the petitioners in the amounts paid upon the assessments against their stock for the purpose of repairing the capital stock of this bank. The relation of trustee and cestui que trust, as to this matter, is not shown by the allegations of the petition. The facts that the Bankers Trust Company had a central bank in Atlanta, was the financial agent and part owner of a number of banks in this State, had a very close connection with the banking department, was the adviser with the superintendent of banks as to all banks in its chain and of which it was financial agent, was considered not only solvent, but very strong financially, and was trusted absolutely by the superintendent

of banks, in no way tended to establish a trust in behalf of the petitioners in the funds paid by them on their assessments to restore the capital of this bank. The approval by the superintendent of banks of the agreement between the Bankers Trust Company and the Bank of Lexington, whereby the former agreed to take over all stock owned by any stockholder who was unwilling to pay the assessment levied to restore its impaired capital, did not have the effect to impress the funds paid by petitioners on the assessments on their stock, to make good the impaired capital of this bank, with any trust which would have entitled petitioners to recover these funds when the bank finally become insolvent and was taken over for liquidation by the superintendent of banks, nor did the delay of the superintendent of banks in having the Bankers Trust Company pay the amount due by it on its assessment for this purpose, and the non-disclosure of this fact to petitioners until they had paid in their assessments for this purpose in good faith, and in the belief that the superintendent of banks would require or had required that company to comply with the above agreement and to pay in the assessment against it to make good such impairment of the capital of this bank, in any way entitle the petitioners to recover from this bank the amounts paid by them on their assessments for the restoration of the capital of this bank, as a preferred claim against the bank. So we are of the opinion that petitioners are not entitled to recover the amounts paid by them on the assessments levied on their stock to make good the impaired capital of this bank, upon the theory of an implied trust.

Any agreement between the bank and its stockholders by which the latter should not be required, in the event the superintendent of banks took it over for liquidation, to pay assessments levied against them on their stock for the purpose of paying depositors, if they had paid their assessments to make good the impaired capital stock, was illegal and void; and such stockholders would not be entitled to recover from the bank, or the superintendent of banks, when it had been taken over by this officer for liquidation, amounts so paid by them on the assessments against their stock. Markus v. Austin, supra; Austin v. Fleming (Tex. Civ. App.), 290 S. W. 835; Sanger v. Upton, 91 U. S. 56 (23 L. ed. 220); Scovill v. Thayer, supra; Austin v. Connellee (Tex. Civ. App.), 292 S. W. 613. Stockholders paying assessments to restore

impaired capital were held not entitled to preference or credit on statutory liability, although the funds raised by assessments for that purpose were insufficient to entirely restore the impaired capital of the bank. Broadbent *v.* McPherson, supra. Although the assessments to repair the impaired capital stock were not all paid, or were insufficient to accomplish that purpose, and the bank failed, and insolvency followed, the equities of the depositors are superior to the equities of the paying shareholders. Gillett *v.* Moore, supra; Broadbent *v.* McPherson, supra.

*Judgment affirmed. All the Justices concur.*