## No. 15,346.

### ELLIS, INC. *v.* ELLIS.
(168 P. [2d] 549)

Decided April 22, 1946.

Mr. CHARLES F. BRANNAN, Mr. WAYNE D. WILLIAMS, for plaintiff in error.

Mr. DAVID K. TONE, Mr. J. G. HOLLAND, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court. Plaintiff in error is a Delaware corporation formerly entirely controlled (as was its two corporate predecessors in interest) by W. A. Ellis, Jr., who died in 1935. The three corporations were organized and the contracts and leases herinafter mentioned executed in his lifetime. Hence for convenience, each of these is treated as an individual and hereinafter referred to as "W. A." Defendant in error, a resident of Ohio, is hereinafter referred to as Orison.

Orison brought this suit for an accounting and the recovery of unpaid royalties and taxes, estimated in excess of $6,000, arising from the operation of a lode mining claim, hereinafter referred to as the American, and alleged to be due under the terms of certain leases. The answer denied ownership, pleaded payments, alleged subrogation of W. A. to the debt of Orison to a third person and contractual release and discharge. By counterclaim W. A. demanded judgment in excess of $6,000, or, in a certain alternative, in excess of $3,000. Trial was to the court, without a jury. Judgment was entered in favor of Orison for $3,823.01 and against W. A. on his counterclaim. To review that judgment he prosecutes this writ. Of the seven assignments but three require notice, i. e., error in holding W. A.'s counterclaims barred by the rule denying recovery for payments made under mistake of law; error in holding that W. A. could not deny the title of his lessor, Orison; error in admitting parol evidence to vary the terms of a written contract.

Prior to consideration of these some further information as to the condition of this record and a brief additional statement of facts are essential to an understanding of the reason for our method of treatment and the conclusions at which we arrive.

This record sets forth an amended complaint containing four causes of action, three of which are for unpaid royalties under mining leases and one for taxes. Attached thereto as exhibits are two mining leases, an "agreement" of fifteen pages and a "supplemental agreement" of five. Then follows an answer and cross complaint of ten pages containing the following: "First defense to the first cause of action," "First defense to the second cause of action," "First defense to the third cause of action," "Second defense to the first, second and third causes of action," "Third defense and first counterclaim," "Fourth defense and second counterclaim." Attached thereto as exhibits are a "release" and a mining lease. Then follows a replication containing the following: "Reply to the third defense and first counterclaim," "Reply to the fourth defense and second counterclaim," "Reply to the defendant's third and fourth defenses and first and second counterclaims." The record contains 160 pages and 700 folios.

W. A. Ellis, Sr., owner of an interest in the American, died intestate in 1918 leaving six children, two of whom are parties hereto. A daughter, Irma, died in 1928, leaving two daughters, Milo and Margareta. McGowan, the husband of Margareta, on her death married another daughter, Ida, who died prior to 1936. In 1931 the county court of Park county, in a cause then pending therein, entered a decree of heirship, adjudicating certain individuals the heirs of Ellis deceased. Eight years thereafter the district court of that county held said decree erroneous in one important particular.

The American remained undeveloped until about 1929 and its value apparently unguessed. Then W. A., in preparation for the prospecting and promoting of it, began acquiring leases from supposed owners. Conflicting claims appeared and family dissentions arose (See, *Ellis, Inc. v. Ellis*, 111 Colo. 502, 144 Pac. [2d] 552), culminating in litigation of which this action is a

manifestation, all seemingly due to the facts that the American proved to be unexpectedly rich and that a very considerable fortune has been taken from it. Counsel trace title to the American from the year 1918, discuss all the family dealings and attempted dealings therewith, the fractional interests held or claimed by each member, and the alleged sharp practices of the parties hereto. These are dwelt upon at length in the evidence and briefs and illustrated by some twenty exhibits.

██ We discover no justification for expeditions into this tangled morass. A few salient facts only are of moment and a few well-settled rules of law need be noticed. All conflicting evidence and possible diverse conclusions must be resolved in favor of the judgment. This we do without comment. If certain propositions of law relied upon by W. A. are, as we think, unavailing to him, affirmance must follow. So far as the judgment denied recovery to Orison on his claim it is here uncontested.

In 1930 and '32, Orison leased a 6/48 interest in the American to W. A. by three separate leases and herein he sued for unpaid royalties thereon, each set up in a separate cause of action. The court found he was not the owner of 1/48 and refused him relief thereon. The judgment entered was for royalties on the other two, accumulating and unpaid since May 1, 1936, and is undisputed if, as the court held, the defenses of want of title, subrogation, and release, are unavailing.

Prior to May 1, 1936 W. A. had paid to Orison over $9,000 royalties on the 1/48 interest the latter did not own, and this sum he seeks to recover by counterclaim. The court, holding this a mistake of law (apparently arising from the conflicting court decrees, supra) and an attempt by lessee to attack the title of his lessor, denied recovery.

██ A tenant is estopped to question the title of one from whom he leases and receives possession. *Knowles*

*v. Innman,* 16 Colo. 385, 26 Pac. 823. So long as the landlord's title is unchanged and the tenant is not disturbed in his possession "It is immaterial whether the title of the landdlord was valid or not." *Wallbrecht v. Blush,* 43 Colo. 329, 95 Pac. 927.

█ Payments such as here alleged are made under mistake of law, not of fact, and are not recoverable. *Gillett v. Moore,* 74 Colo. 484, 223 Pac. 21; *Bowles v. Miller,* 96 Colo. 145; 40 P. (2d) 243; *Utermehle v. Norment,* 197 U.S. 40, 55, 25 Sup. Ct. 991, 49 L. Ed. 655.

██ In 1939 Ida (Ellis) McGowan, now admittedly the owner since 1936 of the 1/48 interest on which royalties had theretofore been paid to Orison, secured a judgment against W. A. for trespass and thereon the latter paid Ida something over $7,000. While Orison was not a party to that suit, he and W. A. were then operating under a "joint venture" agreement and W. A., treating said trespass as joint and Orison liable under that trespass and judgment, seeks to counterclaim herein on the theory that he should be subrogated to the claim of Ida against Orison. It seems reasonably clear that the trial court properly concluded that said trespass was that of W. A., not Orison. In any event W. A. is not entitled to subrogation. The rule of subrogation has no application to joint tort-feasors and equity will give no such relief to a trespasser. *German Bank of Memphis v. United States,* 148 U. S. 573, 13 Sup. Ct. 702, 37 L. Ed. 564; *Akers v. Lord,* 67 Wash. 179, 121 Pac. 51.

W. A. contends that in any event payment of the amount found due by the court was released by Exhibit 5, the "release" mentioned, supra, as an exhibit attached to the answer. The trespass suit by Ida was not only against W. A., but included some six additional defendants. Exhibit 5, signed by Ida and Orison, purports to settle that judgment and release W. A., et al., "of and from all claims, demands, damages, actions, causes of action or suits at law or in equity of whatsoever kind

or nature which they or either of them may have against the above named persons and corporations or any one or more of them up to the date hereof, whether involved in the above entitled action or otherwise." It seems a violent presumption to assume that such a settlement of such a judgment, under the existing circumstances, was intended to release W. A. from the payment of royalties of over $3,000 due solely from W. A. to Orison. Be this as it may, an ambiguity thus appears properly determinable by oral evidence. Such evidence was taken and much of it points to the exclusion of these royalties from that release. This was reenforced by the admitted conduct of W. A. and disclosures from his own books. *Orman v. Potter*, 46 Colo. 54, 102 Pac. 893. Moreover, Exhibit 5 recites, "The undersigned, Ida McGowan and Orison Ellis (the latter having power of attorney· from the former coupled with an interest in the proceeds of any settlement with her of the matters here involved)," etc. This would seem to exclude any purely personal transaction between W. A. and Orison. 4 Jones Commentaries on Evidence (1926 [2nd] ed.), p. 2844, §1556. The trial court expressly found that this release "did not, and does not, release or discharge defendant [W. A.] of the claims alleged or stated in the amended complaint." We think, under the facts and the law, that finding was fully justified.

The alleged error in admitting parol evidence to vary the terms of a written contract relates to evidence admitted by the court in re the construction of Exhibit 5; supra, and is fully covered by the foregoing.

Finding no reversible error in this record the judgment is affirmed.

MR. JUSTICE JACKSON not participating.