No. 17,285.

ROCKY MOUNTAIN FUEL COMPANY ET AL. *v.*
PROVIDENCE WASHINGTON INSURANCE
COMPANY ET AL.

(276 P. [2d] 551)

Decided November 1, 1954. Rehearing denied December 6, 1954.

Messrs. DICKERSON, MORRISSEY, ZARLENGO & DWYER, Mr. L. A. HELLERSTEIN, Mr. R. J. BERNICK, for plaintiffs in error.

Mr. DARWIN D. COIT, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

Plaintiffs in error were plaintiffs in the trial court and we will herein refer to them as plaintiffs.

On or about November 1950, plaintiffs were conducting operations on improved real property in Weld county and, aside from the improvements on the property, were using valuable machinery and equipment located thereon. At that time defendants issued policies of insurance to plaintiffs on the buildings and machinery and equipment in the aggregate amount of $145,000.00, $17,-900.00 of which was upon the buildings and the balance on the personal property and equipment. Each policy covered the same property, but was issued by a different company or defendant and for a different amount of coverage.

Attached to each policy is a typewritten description of each building and its contents under the column headed "Building." There is listed fifteen named or designated structures and the amount of the insurance on each structure is shown. Under the column headed "Contents," is shown the amount of insurance on the personal property or equipment described therein. Item No. 11 shows "Casino Building" covered by insurance in the amount of $2,500.00 and the equipment listed as then located therein covered by insurance in the sum of $13,000.00. These policies, with later endorsements thereon, were dated in November of 1948, and under renewals were in full force and effect on August 27, 1951, when a fire occurred on the premises destroying the "Casino Building," and its then contents to the damage of plaintiffs claimed by them to be in the sum of $71,828.01.

On the renewal of the policies, all issued by the same

agency, an endorsement was placed on each policy in the following language: "Note: The occupancy of all buildings shown on the form is amended to read 'Machinery Warehouse' with the exception of Item No. 8." Plaintiffs complied with the provisions of the policies relative to the filing of proof of claim and the record discloses a refusal by each company to pay the claim as made, in the amount designated as the loss.

On November 5, 1951, plaintiffs filed their complaint against the three insurance companies, seeking recovery of the amount alleged to be the loss suffered. In February 1952, defendants answered, and as a first defense alleged that the complaint failed to state a claim upon which relief could be granted; in the second defense, admitted the issuance of a policy, but alleged that the three policies combined insured plaintiffs only for a maximum amount of $10,000.00 on the contents of the "Casino Building," and for a maximum amount of $2,500.00 on the building itself. Trial to the court was begun September 14, 1953, and defendants admitted that the policies of insurance offered as exhibits were the policies of insurance mentioned in the complaint; that the fire occurred as alleged; that the fire destroyed the building; and destroyed or damaged the contents thereof; that at the time of the fire the value of the "Casino Building" was in excess of $2,500.00. They further alleged that under the terms of the respective policies the combined maximum amount of insurance on the contents of the "Casino Building" was $10,000.00 and $2,500.00 on the building itself; and that defendants had notified plaintiffs that they stood willing to abide by their contractual obligations and jointly pay the total sum of $12,500.00 in full discharge of their policy obligations upon receiving proper proof of loss.

Upon the trial, plaintiffs offered to prove, and made formal offer of proof, that at the time the policies were renewed, it was agreed between plaintiffs and defendants that the various items of personal property covered

in the policies would be insured regardless of where they were located on the mine properties; and that in pursuance of said agreement the notation hereinabove set out, which was an amendment of the policy form, was placed on each policy; further, that at the time, defendants requested plaintiffs to move additional personal property and equipment into the Casino Building to more equally distribute the liability; and complying with that request, plaintiffs moved machinery valued at approximately $50,000.00 into the Casino Building upon the assurance that the property so moved would remain insured. This offer was to cover the testimony of Mr. Jones, vice-president of Rocky Mountain Fuel Company, who had gone over the properties with Mr. McAllister, the fire engineer for the insurance agency, representing all three defendants; that Jones would testify that McAllister called upon Jones and said, "You have got to do something about scattering the risks among various buildings; we are not changing the coverage under the insurance insofar as the amount is concerned, but we feel that if one building was destroyed and everything was concentrated in one building the loss would be too great." This was the substance of the offer of proof No. 1. Offer of proof No. 2 followed, which was, in substance, that Weissbaum, president of the Columbine Mine Company, was informed by Jones concerning McAllister's requests; that Weissbaum met McAllister at the mine property and made an inspection of the location of the personal property; that McAllister requested that various machinery kept in some of the buildings be moved, and particularly some of it to the Casino Building; that Weissbaum advised McAllister that it would cost $5,000.00 to fulfill this request; that McAllister stated that unless it was so moved that the insurance agency would not further arrange for the insurance; and further stated that if the personal property was moved it would be fully insured for the amount of the policy regardless of what building it was in. The

two offers of proof contained other matters; however, the above was the material substance of the offers, to which offers timely objections were made by counsel for defendants on the ground that the admission of testimony according to the offer would be in violation of the parol evidence rule, because the insurance contracts were unambiguous.

We consider only the material parts of the offer in connection with the question of whether or not the contracts of insurance with the endorsement thereon, to which reference is herein made, are ambiguous. It of course follows that if ambiguity appears on the face of the policies or the endorsements thereon, that the intention of the parties to the contract may be shown and explained by evidence extrinsic to the policies themselves, and such evidence may be admitted, not to add to, or detract from, the contract, so long as the evidence admitted is consistent with the written contract. The ambiguity in the present case, of which complaint is made, as a reason for the introduction of parol evidence is the uncertainty of the meaning of the expression used in the endorsement heretofore set out in full.

This Court has consistently held that proof of all the facts and circumstances surrounding and entering into the execution of an insurance contract is admissible to clear up such part or parts of the contract from which more than one meaning is deducible. *Messenger v. German American Insurance Co.,* 47 Colo. 448, 107 Pac. 643; *George Tritch Hardware Co. v. Donovan,* 74 Colo. 350, 221 Pac. 881; and *Ellis, Inc. v. Ellis,* 115 Colo. 12, 168 P. (2d) 549.

The trial court denied plaintiffs' offers of proof on the ground that such would be an attempt to alter and vary a clear and unambiguous contract in violation of the parol evidence rule. On the admission of defendants as to the extent of their liability, as disclosed by their answer, the trial court ordered judgment in favor of plaintiffs in the sum of $12,500.00, prorating same among

the several defendants. Motion for new trial was dispensed with and plaintiffs, in the present review, seek a reversal of the judgment on the ground that the trial court erred in rejecting plaintiffs' offers of proof; in not allowing plaintiffs to give evidence responding to the offers so made; contending that the policies sued upon are not clear and are ambiguous to such an extent that extrinsic evidence is admissible to explain them; and that the matters contained in the rejected offers were admissible to explain the meaning of the policies. The trial court, by its rejection of the proffered evidence, in effect, construed the policies as plainly and unambiguously prohibiting the moving of the insured equipment from one insured building to another. We find no direct statement in the policies or the endorsements thereon to the effect that the equipment as insured was required to be kept in any certain buildings. In the printed portions of the policy form is the statement that the property is insured from loss by fire "to the property described hereinafter *while located or contained as described in this policy.*" (Emphasis supplied.) It is difficult to believe that some uncertainty as to this clause in the printed form did not arise in the minds of the insured as well as the insurer, because the endorsement hereinbefore set out was placed on the policies by each company. A needless circumstance, if the policies as originally written were to remain, as is now contended, as insuring the personal property only when it remained in the building where located at the time of the issuance of the policy. A reasonable interpretation of the endorsement, "The occupancy of all buildings shown on the form is amended to read 'Machinery Warehouse' with the exception of Item No. 8," would be that all buildings on the ground of the insured property were, for the purposes of insurance, converted into a group of general warehouses for occupancy purposes, because item No. 8 excepted therefrom is generally the office and stockroom of plaintiffs, indicating that all other buildings might be

used for the convenient housing of any of the insured equipment. If this is a reasonable inference from the endorsement, then it is to be seen that there also could be an inference that since, on the original policy form, the property is listed in groups arranged to correspond with the listings of the buildings, that the insurance coverage was effective only if it remained in a particular building. This points up an uncertainty of ambiguity in the wording of the endorsement. Had the endorsement read "the occupancy of each building is amended to read 'machinery warehouse,' " there would be a plain indication that each building was to be considered separately; however, the endorsement, as is to be seen, reads, "the occupancy of *all* buildings * * *." (Emphasis supplied.)

Counsel for defendants by his argument in support of his contention that the policies sued upon are clear and unambiguous, goes into extrinsic matters. He says that the endorsement is to show just the change in the occupancy of the buildings, and denied that the endorsement allows a movement of the equipment from building to building. A reading of the schedule in the policy discloses that numerous buildings were designated "watchman's house" and "mine foreman's house" as former occupancies, and nothing is listed as to the contents of these structures; however, by the endorsement, these structures are included in the buildings whose occupancies were changed to machinery warehouse. Counsel for defendants also seems to contend that plaintiffs claim that the amendment increased the amount of insurance. We do not so construe the arguments of plaintiffs' counsel, which plainly appear to be that the amount of insurance was not changed as to either the buildings or the contents, but that it allowed the personal property or equipment to be located in any of the buildings, and thereby carrying the amount of insurance with it. It is only logical that unless the terms of the insurance contract specifically so prohibit, the insurance on the

equipment remains so long as it is in any warehouse that may be designated for such occupancy.

■ There is no contention by counsel for plaintiffs that the inference they claim, and which we see can logically be drawn from the amendment, is the exclusive inference; but they insist that it is one of two or more inferences that can reasonably be drawn therefrom. Finally, it being apparent that the endorsement is susceptible of two or more constructions, as contended by counsel for plaintiffs, and somewhat indicated by counsel for defendants' arguments, proof to explain the facts and circumstances that would clear up the ambiguities was admissible and therefore the trial court was in error in denying the introduction of such testimony under the exception to the rule.

The judgment is reversed and the cause remanded with directions to the trial court to permit plaintiffs to introduce proper evidence in accordance with the offers made.

MR. CHIEF JUSTICE STONE not participating.