518

## No. 17,814.

ROCKY MOUNTAIN FUEL COMPANY, ET AL. *v.* PROVIDENCE
WASHINGTON INSURANCE COMPANY, ET AL.
(307 P. [2d] 200)

Decided February 11, 1957.

Mr. LOUIS A. HELLERSTEIN, Mr. ALBERT E. ZARLENGO,

Mr. ANTHONY F. ZARLENGO, Mr. PHILIP A. ROUSE, for plaintiffs in error.

Mr. DARWIN D. COIT, for defendants in error.

*In Department.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties herein previously appeared before this court in the same positions they now occupy. The first case is *Rocky Mountain Fuel Co. et al. v. Providence Washington Insurance Co. et al.* 130 Colo. 443, 276 P. (2d) 551. There, the previous judgment was reversed and the cause remanded for a new trial "with directions to the trial court to permit plaintiffs to introduce proper evidence in accordance with the offers made." We deem it unnecessary to repeat the contentions of the parties, other than those which appear herein.

The trial court, on the retrial, entered findings of fact and conclusions of law, in substance as follows: That on August 27, 1951, a fire on plaintiffs' premises destroyed the Casino building located thereon, which building was damaged in excess of $2,500, and further that said fire damaged or destroyed the contents of the Casino building, which damage to the contents was in excess of $10,000. That each of the defendants' in error "had contracts of insurance running in favor of these plaintiffs on the Casino Building and the contents thereof; that the policies of insurance issued by these three defendants and in effect at the time of the aforementioned fire provided (a) that the total amount of insurance on the Casino Building itself was $2,500; (b) that the total amount of insurance on the contents of the Casino Building was $10,000."

"That the endorsement which appears on each of the three insurance policies above referred to and which

endorsement reads as follows: 'Note: The occupancy of all buildings shown on the form is amended to read "Machinery Warehouse" with the exception of Item 8,' when viewed in the light of all the facts and circumstances presented at the trial does not alter or change the provision in each of the insurance contracts which provides that the amount of insurance upon the contents of the Casino Building is $10,000; but on the contrary the evidence adduced upon trial clearly shows such endorsements were placed thereon by virtue of a corrective order issued to these defendants by the Mountain States Bureau for rate-making purposes, and that said endorsements as written mean that the occupancy of all buildings, except Item Number 8, is amended to read 'Machinery Warehouse' and that the descriptive words 'Machinery Warehouse' are in opposition to the descriptive words used in designating the former occupancy of the various buildings, such as 'car repair shop, pump house, watchman's house, mine foreman's house,' etc.; and that as a result of these endorsements there was a reduction in premiums to these plaintiffs, all of which is both logical and supported by evidence, namely, that the occupancy of a building, i.e., what is to be stored therein, is one factor which is considered in determining the premium rate; that the endorsements above referred to when viewed in the light of all the facts and circumstances produced at the trial does not mean that the plaintiffs had $127,000 worth of insurance coverage upon their personal property regardless of the building in which said property was located or regardless of how much personal property was stored in any one building."

The court then concluded that the total insurance coverage on the Casino Building and its contents was $12,500, and prorated that amount among the three defendants in error according to their separate contracts. Judgment was entered for this amount together with

interest. From this judgment plaintiffs in the action bring the cause here on writ of error.

It is here urged that the trial court admitted and relied upon incompetent evidence in arriving at its decision, and that the "undisputed evidence establishes as a matter of law that the contract ambiguity should be resolved against the defendants." It is urged that "this results from * * * (1) the defendants were familiar with all the facts and circumstances surrounding the plaintiffs' positions; (2) the defendants' acts misled the plaintiffs to rely upon the ambiguity in the contracts to their damage; and (3) the defendants prepared the contracts containing the ambiguity upon which the plaintiffs relied." These are the sole questions here presented by plaintiffs in error.

It appears from the record that at the time the insurance contracts were written, the plaintiffs were engaged in removing machinery from a mine, reconditioning it, warehousing it in buildings covered by the insurance policies and offering it for sale. After the insurance contracts were in force, the defendants requested the plaintiffs to redistribute machinery to locations other than where it was then stored because (as stated in the brief of counsel for plaintiffs in error) "Too much machinery had accumulated in one place. This evidence is undisputed though there is contradictory evidence as to the stated reason for such request." The machinery was redistributed and the rider hereinafter mentioned was added to each policy. Counsel for plaintiffs in error then argue: "The obvious conclusion to be drawn from these facts is that the defendants' liability was based on the total loss of personal property regardless of location." They further contend: " * * * that all buildings should be considered as one warehouse for insurance purposes."

The endorsement or rider placed on the policies reads: "This endorsement is to show the correct occupancy of all buildings as machinery storage except Item No. 8,

which is corrected to read building F-1 occupied as office, machine shop and electric shop." Due to the new average rate charged a return premium was granted by each insurance company, and received by the insured.

The several policies had a specific amount set opposite each building which was insured, and a specific amount set forth as coverage where the contents of the structure were insured. These figures varied from the year of issue in 1948 through the renewals to the year 1950 and there were reductions in the amount of the coverage in subsequent years as to specific buildings and the contents of buildings. Obviously these reductions in coverage were meaningless and an idle gesture if all personal property of the mine site was to be covered, for that was practically an unlimited amount.

In each instance the nature of the contents was stated. This coverage ranged from $650 on the contents of the bath house to $25,000 on the contents of the Battery shop. The Casino building was insured for $2,500, and its contents for $10,000. The insured personal property in the Casino Building was described as "Mine equipment, L. E. Mach. Motors, Battery parts, Drills." The Mountain States Inspection Bureau, a rating organization, ordered the endorsements or riders attached to the policies for rate purposes only, and this resulted in a reduction of premiums to be paid by plaintiffs in error. The purpose of the endorsements or riders, being Exhibits J, K and L, show by their own terms that they were for rate purposes.

We held in the former case that plaintiffs were entitled to introduce evidence in support of an offer of proof under the claimed "ambiguity." On the retrial such evidence as plaintiffs could adduce was received and the trial court evaluated all of the testimony and the insurance contracts and made detailed and comprehensive findings of fact and conclusions of law, all based on competent evidence.

The trial court was liberal in the admission of

testimony to show the situation of the parties and the reason for the "riders" on the policies. This testimony being that offered and rejected on the former trial of this cause. We held in the former case that such testimony was admissible and the trial court followed our holding and permitted all parties to introduce evidence with reference to the claimed ambiguity. True, the insurance policy "riders" were prepared by the defendants in error or their agents. That does not mean that the insured could under policies such as those before us, where a specific structure is insured together with its contents, store all of its personal property in this one structure and then recover the full value of the personal property destroyed by fire, when the value of personal property was specifically limited as to each of the structures on the insured's premises. It is contended that the question for determination here is whether the equipment as insured was required to be kept in certain buildings. This leads to the inquiry as to why the policies provided for a maximum sum to be recovered for the loss of the Casino Building, and another specific maximum sum for loss of the contents of the Casino Building. The corrective order which resulted in the "rider" produced a reduction in premiums paid by the insured, and instead of the several structures being designated as "car repair shop," "pump house," "watchman's house," "Mine foreman's house," and the like, each was designated as "Machinery Warehouse." It is evident that the original coverage was on the specific structures designated as above and the personal property stored therein. A "watchman's house" would not be a warehouse and the loss of its contents had to be gauged on what was ordinarily kept in such a structure. The "riders" on the policies did not mean that the insured had coverage on their personal property in the sum of $127,000 regardless of the building in which said property was located or how much of the insured's personal property was stored in one structure.

We observe nothing in the record upon which the trial court could predicate a finding that the addition of the riders to the policies misled the plaintiffs. As shown above, the coverage on each building and its contents was definitely stated in the original policies.

■ It is true that the insurance companies prepared the riders, but we note nothing in the evidence introduced on the second trial which would justify a finding that plaintiffs were in any way prejudiced by these riders, or that the defendants assumed any obligation for loss of a specific building or its contents beyond the original coverage or obligation to which they were committed before the riders were attached.

Reading the policies in the light of all the evidence introduced at the second trial we must conclude that the judgment complained of by plaintiffs was correct and should be affirmed.

Defendants in error contend that the trial court erred in allowing interest on the sums found due from each of them and request a modification of the judgment so as to eliminate such interest. Their counsel assert that the insureds wilfully misrepresented material facts "after the loss and were guilty of fraud and false swearing relating to the loss," and that no proper proof of loss had been made; hence they contend that there should be no recovery against their clients. Their answer prayed "that the plaintiffs take nothing by their complaint; that the plaintiffs' complaint be dismissed."

■ Neither the matter of interest nor the alleged "fraud and false swearing" were raised on the trial of the case and are here presented for the first time, although some evidence on the latter issue appears in the record. We have consistently held that questions of this nature presented for the first time in this court are not properly before us for determination. See *Union Pacific R. Co. v. Stupec,* 50 Colo. 151, 114 Pac. 646; *Louden Irrigating Canal & Reservoir Co. v. Town of Berthoud,* 57 Colo. 374, 140 Pac. 802.

The record before us is a voluminous one and indicates the zeal of counsel for the respective parties in their attempt to sustain their several positions. The Insurance Companies continuously resisted plaintiffs' claims and have never tendered the $12,500 into Court, nor did they offer to allow judgment to go against them.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE DAY concur.